J. R. LIVINGSTON *against* GIBBONS, *impleaded* with OGDEN.

Where an injunction has been voluntarily dissolved by the plaintiff, or having been dissolved by an order obtained by his agent or solicitor, without his knowledge and consent, but which was, afterwards, recognized and acted upon by him, the injunction will not be renewed upon his petition, without some new and special reasons, which did not exist when the injunction was originally granted or dissolved.

*May 8th.*　　　　PETITION of the plaintiff, stating, that on the 3d of *May*, 1819, he filed his bill, setting forth, among other things, an assignment from *R. R. Livingston* and *Fulton* to him, of their right, under the several acts of the Legislature, &c., to navigate with *Steam Boats*, from any place within the city of *New-York*, south of the *State Prison*, to the *Jersey* shore and *Staten-Island*, to the south of *Powles'* *Hook* ferry, and to the north of *Sandy Hook*, to wit, to *Staten-Island, Elizabethtown Point, Perth* and *South Amboy*, and the *Rariton* river up to *Brunswick;* and the sole right to use such Steam Boat, to the exclusion of all others, to the places above mentioned, so long as the grant to *L.* and *F.* should be in force. That the plaintiff had constructed and put in operation, within the limits so described, a Steam Boat called the *Olive Branch.* That the defendant *G.*, in violation of the plaintiff's exclusive right, attempted to interfere with it, and to navigate within the said limits, by a Steam Boat, called the *Bellona*, &c. That this Court, thereupon, granted an injunction, restraining the defendant *Gibbons* from navigating with any Steam Boat *the waters of the bay of New-York* and of the *Hudson river*, between *Staten-Island* and *Powles' Hook;* which injunction was duly served upon the persons employed in navigating the Steam Boat called the *Bellona.** That on the 25th of *February*, 1820, the legislature of *New-Jersey* passed an act, to preserve and support the jurisdiction of that state,

* *Vide.* vol 4. p. 416—422.

&c. a copy of which was annexed to the petition.    That the
plaintiff continued to run his Steam Boat, called the *Olive
Branch*, within the waters aforesaid, to *Perth Amboy*, and up
the *Rariton* to *New-Brunswick*, in the state of *New-Jersey*,
until the defendant *G.*, on the 8th of *May*, 1820, under pre-
tence of the said act of the Legislature of *New-Jersey*, and
with a view to defeat the plaintiff's use of his said right, filed
his bill in the Court of Chancery of *New-Jersey*, alleging
himself to be a citizen of *New-Jersey*, and owner of the
Steam Boat *Bellona*, and under pretence that he was en-
joined by the order of this Court, under the acts of the
legislature of this state, from navigating with Steam Boats
on the waters of this state, and under pretence that the
injunction aforesaid, comprehended waters not within the
exclusive jurisdiction of this state.    That *G.*, upon that
bill, obtained an injunction from the Court of Chancery of
*New-Jersey*, restraining the plaintiff from navigating the
waters of *New-Jersey*, with Steam Boats, and from trans-
porting any passengers from the city of *New-York*, or from
*Staten-Island*, into *New-Jersey*, in whatever way the trans-
portation be effected in Steam Boats.    That the said in-
junction was served on the officers of the Steam Boat *Olive
Branch*, at *New-Brunswick*, on the 10th of *May*, 1820, and
afterwards on the plaintiff.    That the defendant *G.* also
prosecuted three several attachments, under the act of
*New-Jersey*, for alleged damages, on three successive
days, of twenty dollars each, and two other attachments,
for 475 dollars each, and attached the *Olive Branch*, as
she arrived, from time to time, in the regular prosecution
of her trips to *New-Brunswick*.    That the master of the
*Olive Branch*, to procure her liberation from such attach-
ments, was obliged to give security for the damages so
claimed.    That when the *Olive Branch* was liberated from
the last attachment, she returned to *New York*, and the
plaintiff discontinued navigating her to the *Jersey* shore.
That on the 31st of *May*, 1820, the plaintiff commenced

1821.

LIVINGSTON
v.
GIBBONS.

running his said boat to *Staten-Island,* opposite *Amboy,* not touching in *New-Jersey ;* and the passengers transported in the boat to *Staten-Island,* proceeded to *Amboy.* That the defendant *G.,* under pretence that such transportation and landing of passengers was an infringement of the injunction issued by the Court of Chancery of *New-Jersey,* caused the same injunction to be served on the ferrymen who transported the passengers from *Staten-Island* to *New-Jersey,* and on the owners of the ferry, and on twenty-five persons, in the whole. That in the beginning of *July,* 1820, the defendant caused three of the ferrymen to be attached and imprisoned, for an alleged breach of the injunction, and they gave bail to answer for the alleged contempt. That the son of the plaintiff, while at *Amboy,* was served with the said injunction, on the 6th of *July,* and having, on the 12th of *July,* proceeded in the *Olive Branch,* from *New-York* to *Staten-Island,* and from thence, in a fisherman's boat, to *New Jersey,* he was taken on an attachment prosecuted by the defendant *G.* for an alleged contempt of the said injunction, by assisting the owner of the fisherman's boat in rowing, and was taken to *New-Brunswick,* where he was obliged to give security to appear and answer for the contempt. That the defendant came to *Perth Amboy,* and offered a reward of fifty dollars, to informers of any breaches of the injunction of the Court of Chancery of *New-Jersey,* by persons living on *Staten-Island.* That the plaintiff's son, on the 20th of *July,* 1820, without the previous knowledge, privity or assent of the plaintiff, procured the plaintiff's solicitor to enter an order in this Court, as of course, to dissolve the injunction in this cause. That the plaintiff was ignorant of the intention of his son to dissolve the injunction in this cause, or of the dissolution of it, until some time after it was done ; and that it was done contrary to his wishes, and without his authority. That the defendant *G.* finding himself under no restraint, has lately established his Steam Boat

*Bellona*, on the route between *New-York* and *New-Jersey*, formerly occupied by the plaintiff, and is daily navigating his said boat from *New-York* to *New-Brunswick*, over the bay of *New-York*, &c., in violation of the plaintiff's exclusive right, founded on the acts of the legislature of this State, &c. *Prayer*, that the order dissolving the injunction in this cause may be vacated, and that a new injunction issue to restrain *G.* from navigating, with Steam Boats, the waters of this State, in the bay of *New-York* and the *Hudson* river, south of the state prison, &c. &c. &c.

The petition was sworn to on the 3d of *April*, 1821. Annexed to the petition was the affidavit of the plaintiff's son, that he procured the plaintiff's solicitor to obtain the order to dissolve the injunction, without the previous knowledge, direction, or consent of the plaintiff; and that the injunction was dissolved without any agreement or understanding with *G.* or his solicitor.

In opposition to the prayer of the petition, the affidavit of *G.* and several papers were read : it was stated, that the first notice *G.* had of the dissolution of the injunction, or of any intention to dissolve it, was from the copy of the order dissolving it. That the plaintiff made use of the order dissolving the injunction in this cause, to obtain a dissolution of the injunction of the Court of Chancery of *New-Jersey*, in the cause of the defendant *G.* against him. That on the 25th of *July*, 1815, a notice and copy of a petition in the cause in the Court of Chancery, of *N. J.*, with a certified copy of the order of this Court, of the 20th of *July*, dissolving the injunction, was served on *G.* The notice was of a motion to be made in the cause of *G.* v. *J. R. L.*, in the Court of Chancery of *N. Y.* on the 4th of *August*, to dissolve the injunction in that cause, and to discharge the several attachments issued in the cause. The petition of *J. R. L.* disclaimed all intentional contempt of the Court; and stated that he had ordered the officers of

1821.
LIVINGSTON
v.
GIBBONS.

the *Olive Branch* to keep within the waters of *New-York*; that having removed the injunction against *G.* (as appeared by the the certified copy of the order, annexed to the petition), referred to in his bill, and which was the foundation of his proceeding, the petitioner prayed that the attachments might be discharged, and the injunction dissolved. The Court of *New-Jersey* granted the prayer of the petitioner, and an order was entered accordingly. The affidavit of *G.* stated that the injunction obtained by him in *N. J.* was not applied for in consequence of the terms of the injunction of this Court; but solely on the ground that *G.* being a citizen of *N. J.* had a right to navigate with Steam Boats any of the waters between the ancient shores of *N. J.* and *N. Y.*, and that any restraint under the laws of *N. Y.* was an infringement of that right. That after the dissolution of the said injunction, the boat of the defendant *G.* called the *Bellona*, was employed in navigating between *New-York* and *New-Brunswick*, until the 16th of *December*, 1820, when she was interrupted by the ice, and was seized by the plaintiff or his agents, under a pretence of claim to her as forfeited. That having recovered possession of his boat, and understanding that the plaintiff threatened to cause her to be seized, a bill was filed on the equity side of the Circuit Court of the *U. S.* for the district of *New-York*, to restrain the plaintiff from so doing, and an injunction was granted by that Court, which was served on the plaintiff; and which suit in the Circuit Court of the *U. S.* is still pending, and that injunction in full force. The decretal order of the Court of Chancery of *N. J.* recited that *J. R. L.* had caused to be dissolved on the 20th of *July*, 1820, the injunction granted in this suit against *G.*, and that the motion for dissolving the injunction in that cause had been argued by the counsel on both sides, and that the defendant in that cause having first cleared his contempt, &c., by paying the costs of the attachments

&c., and the counsel being heard upon the merits; all further proceedings on the attachments were ordered to cease, and the injunction to be dissolved, on payment of the costs of that suit.

*Van Vechten,* in support of the motion for vacating the order of the 20th *July,* 1820, and granting an injunction according to the prayer of the petition.

*Henry,* contra.

THE CHANCELLOR. The injunction which was granted in this cause, on the 3d of *May,* 1819, was voluntarily dissolved, on the motion of the plaintiff's solicitor, on the 20th of *July,* 1820. The plaintiff now states in his petition, that the order for dissolving the injunction was procured by his son, " without his knowledge, privity, or assent;" and that it was contrary to his wishes. Admitting this to have been the fact, yet we find that the plaintiff, very shortly thereafter, acted upon that order, and gave it his undoubted ratification. It appears that his boat, the *Olive Branch,* had been restrained by process of injunction from the Court of Chancery of *New-Jersey,* from navigating the waters of that state, and that the boat had been subsequently attached, and process of attachment had been served upon the son of the plaintiff, and on the master of the *Olive Branch,* and also on other persons acting under the plaintiff, for breach of that injunction. The order of the 20th of *July,* was entered for the purpose of being relieved from that restraint and these attachments; and we accordingly find, that on the 25th of *July,* 1820, the solicitor of the plaintiff gave notice of a motion to be made before the Court of Chancery in *New-Jersey,* for the dissolution of the injunction in *New-Jersey,* and for the discharge of the attachments. The motion was made and argued on the 4th of *August,* 1820, and it was founded on a petition of the present plaintiff, shown to have been subscribed by him, and in which he stated, that " hav-

1821.

LIVINGSTON
v.
GIBBONS.

ing removed the injunction against *Thomas Gibbons*, as per certified copy of an order of the Court of Chancery of the state of *New-York*, annexed, referred to in the bill of complaint of said *Thomas Gibbons*, and which is the foundation of his proceedings," he thereupon prayed that the attachments might be discharged, and the injunction dissolved.

Here was a full and formal recognition of the act of his son, and of his solicitor, in procuring the injunction issued from this Court to be dissolved. *Omnis ratihabitio retrotrahitur et mandato œquiparatur.* It is a little extraordinary, that if the order for dissolving the injunction was procured without his knowledge, and contrary to his wishes, that the plaintiff should a few days thereafter, in his petition to the Chancellor of *New-Jersey*, speak of " having removed" the injunction by the order referred to. He treated it, in that petition, as an act of his own, or flowing from his authority.

The plaintiff was successful in his petition, and the voluntary dissolution of his injunction here, procured the dissolution of the defendant's injunction in *New-Jersey*. The dissolution here was without the knowledge or co-operation of the defendant, who even resisted the motion of the plaintiff in the *New-Jersey* Chancery. This act of dissolution of the injunction was made the ground of the decretal order in *New-Jersey*, for dissolving the injunction and discharging the attachments there; and it would seem to be contrary to equity and good faith, for the plaintiff, after having obtained a valuable consideration for the dissolution of his injunction, to procure it to be restored. He ought, at least, to consent to place the defendant *G.* in *statu quo*, and to restore him to all the legal privileges and advantages which he possessed, when the plaintiff applied to have them withdrawn, by reason of the very act which he now seeks to avoid. But I cannot impose, (and if I did, it would be ineffectual,) as a condition to the granting of the present motion, that the defendant be reinstated in all his rights and privileges in the

other state. To do this, the security or bail which was given on the attachment of the *Olive Branch*, and on the attachment of the several persons who were charged with breaches of the *New-Jersey* injunction, ought to be replaced, and the Chancery suit revived. I presume all this cannot be done, and that the circumstances of the case are so changed, that things cannot be replaced in their former condition, and with their former force and effect. And if it could be done, what right has the plaintiff to ask it? There was no fraud, imposition, or mistake, in the voluntary act, or in the voluntary ratification of the act, of dissolving the former injunction. *Volenti non fit injuria.* It would be unjust in itself, and derogatory to the authority and dignity of the administration of justice, to suffer the process of the Court, imposing great and inconvenient restrictions on the defendant, to be withdrawn, in order to procure, by the operation of that fact, advantages against that very defendant, and against his consent, in his counter suit, and then to be reinstated in its former vigour. I shall certainly not permit the process of this Court to be so used and so abused.

I do not mean to be understood to say, that the plaintiff has lost forever his exclusive privilege under his grant from *Livingston* and *Fulton*, as against the defendant. I am not prepared to say to what extent, and for what period, the injunction so withdrawn, is hereafter to be withheld. I mean only to say, that upon this interlocutory motion, and without any new and special reasons, not existing when the injunction was originally granted, or when it was dissolved, I shall not consent, as of course, to renew the injunction. It was granted, in the first instance, upon consideration and argument, as a necessary, but unpalatable measure, flowing from the exclusive grant to *L.* and *F.* It has been steadily maintained, for upwards of fourteen months, against the persevering efforts of the defendant *G.*, to elude or question its authority. This very process, of which we are speaking,

led to grave and momentous consequences. It produced, as an act of retaliation, the law of *New-Jersey*, of the 25th of *February*, 1820, referred to in the plaintiff's petition ; and it produced the bill, injunction, and attachments under that law, against which the plaintiff sought to be relieved, by the voluntary sacrifice of his injunction in this Court. He has made the sacrifice, and has obtained what he deemed the equivalent, and he must, in the present state of the case, be content to abide by his election. This Court gave him full and absolute protection, under the monopoly, and it would have continued that protection, uninfluenced by any thing that had been done in *New-Jersey*, if the plaintiff had not thought proper, of his own accord, to renounce it. Possibly, the plaintiff may have acted injudiciously in the choice of his means to obtain relief in *New-Jersey*. A wiser course may have been, to have left his own injunction undisturbed, and to have questioned and litigated, from Court to Court, (if necessary,) the validity of the statute of *New-Jersey*, and the proceedings under it, until he had obtained a final decision on the constitutionality of that law of reprisals, in the Supreme Court of the *United States*. But if he has committed an error in judgment, neither this Court, nor the defendant are responsible, in any degree, for that error ; and I think that good faith requires that he should not now lightly attempt, nor lightly be permitted to retrace his steps.

The motion was denied, with costs to the defendant for resisting it, and the following order entered :

" *It appearing* that the said order of the 20th of *July* last was entered upon the motion of the plaintiff's solicitor, and was on a petition made and subscribed by the plaintiff to the Chancellor of the State of *New-Jersey*, on the 4th of *August* last, mentioned and recognized as his own act, and made the ground of an application for relief against an injunction issued by the Court of Chancery of *New-Jersey*, in favour of the defendant against the

plaintiff, and for relief against several attachments is-
sued for breaches of that injunction. *And it fur-
ther appearing*, that the act of dissolution of the in-
junction in this Court, was the efficient cause of the disso-
lution of the injunction, and of the discharge of the attach-
ments in *New-Jersey*, upon such application, and that the
plaintiff thereby obtained, what he deemed to be an
equivalent for the voluntary discharge of his injunction
from this Court, justice and good faith not permitting the
injunction here to be renewed under the present circum-
stances of the case : It is thereupon ordered, that the said
motion be denied, with costs to be taxed, and to be paid by
the plaintiff to the defendant, for resisting the motion."